## Willis H. Ballance v. Louis C. Vanuxem et al.

1. CONTRACTS—*When Cancellation is Justified.*—The failure of a sub-agent in an insurance business to remit the balance of premiums collected, after deducting his commissions, is held to have been a breach of his contract, and when connected with a failure to account for policies in his hands for delivery, is amply sufficient to justify a cancellation of his contract.

**Assumpsit,** on a contract of agency. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Affirmed. Opinion filed July 17, 1900.

Church, McMurdy & Sherman and Cyrus W. Rice, attorneys for appellant.

Joseph Cummins, attorney for appellees; Henry A. Gardner, of counsel.

Mr. Justice Freeman delivered the opinion of the court.

The first of May, 1889, the parties to this controversy entered into a contract wherein appellees, as general agents of the New York Life Insurance Company, appointed appellant agent of said company to canvass for applications for life insurance in certain designated counties of this State, with title of " General Manager of the Central Illinois Agency of the New York Life Insurance Company." Said contract, which is quite lengthy, contained among other things, a provision that it should " continue in force and effect until May first, A. D. 1890, unless sooner terminated by mutual consent or a violation of its terms and conditions, or failure to comply therewith; in which event all moneys due by either party shall immediately become due and payable."

October 22, 1889, appellees addressed a letter to appellant, in which the latter was notified that " by reason of your failure to comply with the terms and conditions of your agreement, dated May 1, 1889, said agreement is hereby terminated.   We shall immediately commence suit against you to recover the indebtedness due us from you for breach of contract."   In accordance with this notification, this suit was commenced some six months later, and judgment was eventually rendered in favor of appellees, from which this appeal is prosecuted.

It is alleged by appellees that the breaches of the contract complained of are, first, that appellant did not devote sufficient time and effort to the business, and earned only a part of the compensation paid him in the way of advances by appellees; second, that he failed and refused to turn over to appellees the premiums which he collected, less the proper commissions; and third, that appellant failed and

refused to account to appellees for policies issued by the company and sent to appellant for delivery to the insured.

It may be doubted whether it would have been sufficient ground for terminating the contract before the expiration of the first six months after it went into effect, that appellant had not succeeded in earning the advances agreed to be made to him. Our attention is not called to any provision of the contract so requiring. The charge that appellant neglected to " devote sufficient time, talent and energies to the business " is certainly not proven, and apparently disproven by the tenor of letters written by appellees. Evidently these were not the substantial grounds for terminating the agreement.

But the alleged failure of appellant to remit the balance of premiums collected, after deducting commissions paid to sub-agents, was, it is contended, a most serious breach of the contract, and when connected with failure to account for policies in his hands for delivery, amply justified the cancellation of the agreement.

It is denied by counsel for appellant that the latter was in fact indebted to appellees at all, for premiums collected or otherwise, and it is asserted that they were indebted to him. If such indebtedness to appellant actually existed, it is difficult to understand why he voluntarily paid over to a representative of the company over $1,200 of premiums in his hands over and above his full claim for commissions for himself and his sub-agents, shortly after the date of the letter notifying him of the termination of the contract. His counsel's explanation that these premiums belonged to the company and were paid to some other agent as distinguished from appellees, seems to make a distinction where there is no difference. That certain advances to be made by appellees were not always paid at the times agreed upon created no real indebtedness to appellant when he had money in his hands due appellees or the company.

While it is conceded by appellees that appellant was permitted to retain out of moneys in his hands, commissions actually paid to sub-agents, it is denied that he had any right, under the agreement, to deduct and retain as he did,

his own commissions out of premiums collected, and certainly no right in any event to retain the balance of the premiums over and above all commissions. The contract provides that appellant should receive as his compensation for services, " a single brokerage commission of sixty per cent, graded upon original first year's premiums, which shall be obtained, collected, paid to and received by said general agents (appellees) in cash from said agent (appellant) on policies of insurance effected during the continuance of this agreement," etc. This is the general compensation to which he was entitled for his services as agent under the agreement. It is further provided that should he by diligence and good fortune effect within the year new insurance to the amounts of $1,000,000, or $1,500,000, and pay premiums on a certain fixed amount thereof to appellees " in full without deductions " then he is to receive additional compensation offered by way of bonus. But as the conditions upon which these so-called " bonus offers" could be earned, had not been complied with when the agreement was terminated, we need not in this connection take them into consideration. Appellees agreed on their part that they would advance to appellant " on account of the compensation to be paid said Ballance personally," $625 semi-monthly, and upon the adjustment of accounts, if it should appear that appellant had received more than he was entitled to under the agreement, then he was to repay to appellees the excess. The contract also provided for certain other advances for office expenses and clerk hire to be repaid under conditions stated.

It thus appears from the agreement that appellant was entitled to receive as his compensation a fixed brokerage commission upon original first year's premiums paid to and received by appellees in cash; and as the amount to become due him was dependent upon his success, which only the future could determine, appellees agreed to advance him a certain amount on account of such personal compensation without waiting until he earned it. Counsel argue that appellant was entitled to " deduct and retain from premiums collected the commissions which the collection of those

premiums earned him," and at the same time to receive reg-
ularly from appellees the semi-monthly advances on account
of such commissions.    The contract will not bear such con-
struction.   Appellant's commissions were due him only upon
premiums paid to appellees in cash.    It was the evident
intention of the contract that such payment of premiums
should be made as appellant received them.    The latter had
no right to expect of appellees the continual payment of
advances, when he was retaining the commissions on account
of which the advances were to be made.    The suggestion
that these advances were on account of the "*bonuses*" and
not on account of the commissions, finds no support in the
·agreement.    They were on account of the compensation to
become due him under the agreement in whatever form it
might be earned.

It is said on behalf of appellant the agreement, although
it provides that subordinate, agents under contract in his
district shall be paid by appellant, contains no provision
authorizing him to retain out of the premiums the commis-
sions paid thereon to sub-agents; and yet as appellees con-
cede his right to deduct and pay such commissions, no
reason exists why appellant could not in like manner retain
his own commissions out of said premiums; that he had as
much right to do the one thing as the other.    If appellees
chose to allow appellant to deduct the amount paid sub-
agents. instead of receiving it themselves and paying such
sub-agents or furnishing money to appellant for that pur-
pose, the latter has no reason to complain.    His own com-
missions were being advanced to him semi-monthly in
anticipation of their receipt by appellees.    He was not
entitled to receive advances and retain commissions at the
same time.

Appellant was required to pay over "all collections made
under this agreement" "immediately" or "in accordance
with instructions."    We do not accept the construction of
appellant's counsel of appellees' letter of August 14, 1889,
that it instructed appellant to retain money collected.    In
that letter the writers explain that they had refrained from
sending the semi-monthly advances, because appellant had

not responded to their repeated requests for reports of premiums they knew he must have collected, and they considered that he was charging up such premium money against the advances; but that if this was not so, they would send check.    While there were differences of opinion, and each party claims that the other was in fault, we find no justification for the continued retention by appellant of money which by the terms of the contract was payable to appellees immediately upon its collection.

It is claimed by appellant's counsel that the evidence does not establish any failure or refusal to report as to whether policies sent him for delivery and collection were actually in force or not.    The contract does not upon its face provide for such reports, but it was evidently a matter of importance that the company, through its general agents, should know what policies were in force upon which liability might at any time accrue.    The record contains a number of letters from appellees which, so far as appears, were practically disregarded by appellant.    The latter was urged repeatedly to make settlement of premiums and to account for policies.    In a letter of September 20th, complaint is made of the "hardship that we should be obliged to continue to pay interest to the company for premiums collected on policies sent to you, which remain in your hands, where they have been for from six to eight weeks."    In a letter dated September 28th, appellees refer to "seventy-six policies now sixty days old, amounting to $339,500, premiums on which are $13,813.82, which have not been settled for by you, and thirty-nine policies, amounting to $150,500, premiums $5,422.52, which must be returned for cancellation."    Appellant was repeatedly urged to visit appellees at their headquarters in Chicago, even at appellees' expense, for interviews on matters of business and adjustment of differences, and refused or neglected to comply with appellees' wishes or remedy the matters of which appellees complained.    We are forced to the conclusion that appellant's conduct was such as to justify the rescission of the contract. It was, we think, such a disregard of the obligations of the contract as tended to defeat its object in material respects.

But it is contended that appellees were precluded from insisting upon their right to terminate the contract by reason of their own default. The alleged breaches complained of are, failure to advance the semi-monthly payments of $625 each, failure to advance $400 for furniture, failure to furnish appellant with a bookkeeper, and making a contract with one Smith, as agent for the company, just prior to the contract with appellant. With reference to the first of these alleged breaches, it is conceded that in fact the advances were made up to the month of October, during which the contract was terminated, and they were made, as we think, in substantial compliance with the agreement. The second and third alleged breaches are certainly not violations of the agreement. It appears that appellees did comply with their voluntary offer of a bookkeeper, by furnishing one for a considerable portion of the time. As to the fourth alleged breach, the contract with Smith, it is contended that the existence of this contract was concealed from appellant. The testimony upon this point is somewhat conflicting, but fails, we think, to establish that appellant was misled or imposed upon. We have fully considered the evidence and arguments of counsel, and deem it sufficient to say that we do not regard appellees guilty of any substantial violation of their agreement, such as to preclude them from terminating the contract, as was done.

In view of the length of this opinion, it must suffice to say that we find no material errors in the ruling of the Circuit Court upon the propositions of law, or in the findings of facts. The latter are, we think, as favorable to appellant as the evidence can justify. The judgment must be affirmed.